## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

### JUNE 1998 SESSION

FILED

October 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| **TAVARUS U. WILLIAMS,** | ) |
| | ) C.C.A. No. 02C01-9711-CR-00423 |
| Appellant, | ) |
| | ) Shelby County |
| V. | ) |
| | ) Honorable Chris Craft, Judge |
| | ) |
| **STATE OF TENNESSEE,** | ) (Post-Conviction/First Degree Murder) |
| | ) |
| Appellee. | ) |

FOR THE APPELLANT:

C. Anne Tipton
Attorney at Law
140 North Third Street
Memphis, TN 38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Peter M. Coughlan
Assistant Attorney General
Cordell Hull Bldg., 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General

Daniel S. Byer
Assistant District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN 38103

OPINION FILED: _____

**REVERSED; CONVICTION VACATED;
REMANDED FOR NEW TRIAL**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

In September 1991, fifteen-year-old Tavarus Williams, the appellant, shot and killed Raymond Brooks outside of J.T.'s Lounge in Memphis, Tennessee. He was tried as an adult and convicted by a jury of first degree premeditated murder in the Shelby County Criminal Court. The court sentenced the appellant to life imprisonment with the possibility of parole. The Court of Criminal Appeals affirmed the judgment of the trial court. State v. Tavarus U. Williams, C.C.A. No. 02C01-9307-CR-00137 (Tenn. Crim. App., filed at Jackson June 29, 1994). The appellant's application for permission to appeal was denied.

In November of 1995, the appellant filed a motion for post-conviction relief. An amended petition was filed in August of 1996. After an evidentiary hearing, the court denied the petition and this appeal followed. The following issues are presented for our review:

> I. Whether the appellant's counsel failed to adequately investigate and assess his case and effectively present the proof at trial.
>
> II. Whether the appellant was denied a fair and impartial jury of his peers because the trial court refused to excuse a juror who revealed information prejudicial to the appellant during the trial.
>
> III. Whether the appellant's aunt, De Lois Jacocks,[1] exerted undue influence over the appellant such that he could not properly confer with his attorney and make his own decisions regarding his case.

Because we find that the evidence preponderates against the trial court's finding that the appellant failed to establish that his attorney was ineffective, we reverse the lower court's judgment, vacate the appellant's conviction and remand this matter for a new trial.

---

[1] In the post-conviction hearing transcript, the appellant's aunt's name is spelled "Jacocks." In the Court of Criminal Appeals decision, her name is spelled "Jacox."

In February of 1992, the court appointed assistant public defender Samuel Perkins to represent the appellant. The case was set for trial on June 22, 1992. In 1992, the appellant's father was in prison and his mother was in a mental institute. The appellant's aunt, De Lois Jacocks, accompanied the appellant to his appointments with attorney Perkins. Ms. Jacocks told Perkins that God had forgiven the appellant and would take care of him. She also told Perkins that she was going to hire a "real lawyer" or ask for a different public defender.

Perkins reviewed the state's file and obtained a plea offer from the state. The appellant rejected an offer to plead guilty to second degree murder in exchange for a forty-year sentence. The appellant stated that he did not believe the sentence fit the facts of the crime. With the assistance of different counsel, the appellant had previously given a statement to the police in which he described the shooting as one of self-defense. Since the state would not make the appellant any other offers, he decided to proceed to trial.

At the post-conviction hearing, Perkins testified that he did not request an investigation from the public defender's office because he wanted to do the investigation himself. He testified that he had been to J.T.'s Lounge and knew the people there. Perkins testified that, on March 20, 1992, he went to the lounge and talked to three men and a lady who were in the bar. He also talked to the disc jockeys. He testified that the people he had interviewed did not want to get involved so he did not record their names. This effort is primarily the extent of Perkins' investigation into the appellant's case.

Attorney Perkins testified that he did not remember talking to the state's witnesses. He testified that his file did not contain any notations that he had tried to contact the state's witnesses prior to trial or that he had talked to those witnesses. Attorney Perkins told the appellant to have his witnesses get in touch

with the public defender's office and set up an appointment so that Perkins could take a statement from them. Perkins testified that this was his policy because too many witnesses had surprised him at trial. He also stated that if the witnesses would not come to his office then they would be unlikely to show up for trial. Perkins never talked to the appellant's witnesses. He did not subpoena any witnesses to testify on the appellant's behalf at trial.

At the post-conviction hearing, attorney Perkins testified that he was ready to go to trial on June 22. He testified that the trial court granted a one week continuance because the appellant told the court that he had several witnesses that he wanted Perkins to interview. At this point in the post-conviction hearing, the court ordered a transcript of the June 22 hearing. The transcript was later introduced as evidence at the post-conviction hearing. The transcript revealed that, on June 22, Perkins was accompanied to court by the Assistant Director of the Shelby County Public Defender's office, attorney Robert Jones. Perkins asked the court for a continuance because he had not completed his investigation of the case. He told the court that he had talked to two of the state's seven or eight witnesses. The court responded that it was sure that Perkins' investigator had provided him with a complete report. Perkins told the court that an investigation was not ordered because the appellant's aunt had said that she was going to hire a "real lawyer." The court responded that it was aware of Ms. Jacocks' intentions to hire another attorney. The court stated, however, that he had told Perkins four or five times that the case was going forward to trial, regardless of whether the appellant wanted to substitute counsel. Assistant Director Jones apologetically acknowledged that Perkins should have been prepared to go to trial. Jones told the court that the appellant's case had not been fully investigated. The court granted a one week continuance, with the trial set for Monday, June 29th. The court revoked the appellant's bond so that Perkins would have no trouble meeting with him. Perkins met with the appellant one time, that being on the eve of trial.

On June 22, Shelby County Public Defender, A C Wharton, immediately assigned his Supervising Investigator, Leah Abbott, to the appellant's case. Ms. Abbott was a nine-year veteran of the public defender's office. At the post-conviction hearing, Ms. Abbott testified that an investigator is usually allotted one to one and one-half months to investigate a "serious" case. To begin her investigation, Ms. Abbott was given the indictment and some of the discovery. Ms. Abbott testified that she and Perkins did not have a chance to talk about the theory of the defense. She testified that she was not provided with as much information about the appellant's case as she usually is at the beginning of the investigation. Ms. Abbott contacted Perkins to find out how she could reach Ms. Jacocks. Ms. Abbott interviewed the state's witnesses. She interviewed every potential defense witness that she could reach. She followed up on as many leads as time permitted. Ms. Abbott prepared written summaries of her interviews for Perkins. In her summaries, she gave her impressions about the witnesses and made notations such as "we do not want this witness," "talk to me about this witness," and "Important, read."

Ms. Abbott testified that she located a witness who was unrelated to the appellant or the Jacockses. The witness, an older man, "felt very strongly" that the victim had been pulling a gun on the appellant when the appellant shot him. Ms. Abbott did not remember the name of the witness and did not have a copy of the summary of his statement. Ms. Abbott placed the name of the witness and a summary of his testimony, along with the results of her investigation, in Perkins' "box" on the morning of the trial. The witness came to the appellant's trial and was available to testify on the appellant's behalf. Perkins did not call the witness to testify. Perkins testified that he was unaware of the witness.

No explanation was presented as to why Ms. Abbott and Perkins did not speak about this witness immediately prior to or during the trial. There appears to have been no communication between Ms. Abbott and Perkins after Ms.

Abbott submitted the results of her investigation. Indeed, Ms. Abbott testified that she did not have a reasonable opportunity to discuss the results of her investigation with Perkins. From her testimony, it appears that she and Perkins did not discuss the case during the weekend prior to trial. They did not discuss the case on the morning of trial. Ms. Abbott testified that Perkins never asked her about any of the investigation and never tried to contact her during the trial. Perkins testified that he spoke with Ms. Abbott three or four times during the week before trial. He testified that they talked about what she had discovered during her investigation and about the witnesses' testimony. The import of Ms. Abbott's testimony is she never had any meaningful conversations about the results of her investigation, if she had any discussion at all. Finally, Ms. Abbott testified that she did not have enough time to interview the appellant, although she did have his statement.

The trial court dismissed the appellant's petition. The court held that the petitioner failed to establish that he was denied effective assistance of counsel. The court found that the necessary investigation was complete prior to trial and that at no time was Perkins taken by surprise by anything that was introduced at trial. The court also held that, even assuming that Perkins' representation was ineffective, the petitioner failed to establish that he was prejudiced by the errors.

The findings of fact of the trial judge on a petition for post-conviction relief are conclusive on appeal, unless the evidence preponderates against those findings. We do not reweigh or reevaluate the evidence, nor do we substitute our inferences for those drawn by the trial judge. Questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. See Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The appellant has the burden of establishing that the evidence preponderates against the findings of the trial court. See id.

To establish ineffectiveness, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; this requires the petitioner to demonstrate that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Constitution. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Henley, 960 S.W.2d at 579. A petitioner must also establish that the deficient representation prejudiced the defense to the point of depriving the appellant of a fair trial with a reliable result, calling into question the reliability of the outcome of the trial. See Strickland, 466 U.S. at 687; Henley, 960 S.W.2d at 579. To establish prejudice the petitioner " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Henley, 960 S.W.2d at 579 (quoting Strickland, 466 U.S. at 694).

Perkins' failure to properly investigate the appellant's case and prepare for trial constitutes ineffective assistance of counsel. Perkins did not receive the written results of Ms. Abbott's investigation until the morning of his trial. We fail to see how he had any meaningful opportunity to review these results. The record reflects that he did not review all of the investigative findings with Ms. Abbott. Ms. Abbott testified that she did not have time to conduct the investigation in the usual manner, including locating defense witnesses who were out of town. That Ms. Abbott was able to locate at least one unbiased defense witness in the few days that she had to investigate the case indicates that Perkins' efforts at investigation were insufficient. Although Ms. Abbott completed a large portion of the investigation prior to trial, it does not appear that she was able to effectively communicate the results of her investigation to Perkins so as to benefit the appellant.

The court below made no specific findings of credibility regarding either Perkins or Abbott, although it relied heavily on Perkin's testimony when contrasted with the appellant's. Although we defer to the trial court, we have serious problems with Perkins' credibility. Before the post-conviction court ordered the transcript of the June 22 continuance request, Perkins blamed the appellant for the need to have the trial continued. He stated that "I was ready." From reading the transcript of June 22, we fail to see how Perkins could have forgotten that the Assistant Director of the Shelby County Public Defender's office, Robert Jones, accompanied him to court on the day of trial because Perkins was not prepared for trial, despite the trial court's repeated instruction to be ready. In any event, we turn to Perkins' investigation.

Although Perkins had reviewed the state's file and talked to the assistant district attorney, this is not a substitute for an independent investigation into the facts of this case. While there was no dispute that the appellant shot the victim, there was a dispute as to whether the shooting was premeditated. Perkins' investigation consisted of going to J.T.'s Lounge once and talking to the people that just happened to be there when he arrived. He testified that he may have interviewed two of the state's witnesses. Perkins should have ordered an investigation or interviewed all witnesses, including those furnished by the appellant. As Perkins seemed to understand, the case involved a fifteen-year-old charged with first degree murder. At one point in the hearing, Perkins testified that he did not investigate the case because, up until the week before trial, Ms. Jacocks continued to tell him that she was going to hire another attorney. This is not a reasonable basis for Perkins' failure to investigate the appellant's case. All attorneys must deal with difficult clients. This does not excuse them from being prepared when in court on behalf of that client. Furthermore, the trial court repeatedly told Perkins to be ready for trial.

In addition to finding ineffective assistance at the investigative stage of the case, we hold that the appellant has also established prejudice resulting from Perkins' representation. In determining whether a petitioner has established prejudice, a court

> must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated trivial effect....

Henley, 960 S.W.2d at 580 (quoting Strickland, 466 U.S. at 696-97).

A review of the facts as found by this Court on direct appeal is necessary to determine if the evidence presented at the post-conviction hearing establishes a reasonable probability that the results of the appellant's trial would have been different if that evidence had been introduced at the appellant's trial. The transcript of the appellant's trial is not in the record.[2] The facts as found by this Court on direct appeal are as follows:

> On September 14, 1991, appellant was at J. T.'s Lounge in Memphis, Tennessee. He began to argue with Raymond Brooks, the victim, concerning a woman to whom both were speaking. The men were separated by friends, and appellant left the lounge.
>
> Tony Jefferson was working at the lounge that evening and knew the victim well. After the argument with appellant, Mr. Jefferson took the victim to the back of the lounge and told him to go home. He thought the victim had calmed down until he heard him tell Darryl Dawkins that he was "going to go out there and slap [the appellant] like a whore." The victim and Mr. Dawkins then left the lounge. Outside, they approached the appellant. Testimony differs as what happened next. Tony Jefferson testified that the victim got in the appellant's face and asked, "What's up?" At that point, appellant drew a gun and shot him.
>
> A number of other individuals also witnessed the shooting. Patrick Mason was approximately one block away at the time. He heard the victim ask, "What's on your mind?"

---

[2] Apparently the trial court reviewed the transcript of the appellant's trial prior to making his decision.

before he got shot. After shooting the victim, appellant said, "Look at you now."

David Monger was leaving a nearby lounge when he heard two gunshots. Looking around he saw the victim falling backwards and another man shooting at him. He stated that there was a hesitation between the shots and that the man appeared to be picking his places to shoot. After the shooting, he heard the man say, "I told you I was going to get you, boy."

Willie Hayden, a security guard in the parking lot of the lounge, was about five yards away when the shooting began. After he heard the first shot he looked back to see what was happening. He stated that the victim was unarmed and had his hands to his side. Mr. Hayden identified appellant as the shooter.

Eric Harris and Marcus Jacox, friends of the appellant, also testified as to the shooting that evening. Mr. Harris left the lounge with appellant and Marcus Jacox after the initial altercation with the victim. Later, the victim came outside and approached appellant. He asked, "You got something to say to me?" The victim then turned to a friend and said, "Give me that thing." At that point, appellant began shooting and Harris ran across the street to his car. He refused to give appellant a ride home.

Marcus Jacox gave similar testimony. He heard the victim say to a friend, "Man, give me that thing so I can kill this bitch." The victim then leaned his hand towards his friend who pulled up his shirt to reveal a pistol. At that point, appellant shot the victim.

Dr. Jerry Francisco, professor of pathology at the University of Tennessee, performed the autopsy. He stated that the victim died of multiple gunshot wounds to the head and chest. There were a total of four wounds to the head and two to the chest.

In a statement to the police, the appellant stated that he overheard the victim say that he, the appellant, was going to die tonight. The appellant stated that he was approached by the victim and the victim's friend outside the club. The victim directed several epithets at the appellant and then asked his friend for the "tone." The victim's friend raised his shirt and the appellant saw a pistol. Seeing the gun, the appellant pulled out his pistol and shot the victim. He stated that he kept on shooting because he was afraid for his life. The statement was not introduced at trial but was introduced at the post-conviction hearing.

The evidence to support the appellant's conviction of first degree murder was not overwhelming. See Strickland, 466 U.S. at 696 ("a verdict . . . only weakly supported by the record is more likely to have been affected by [counsel's unprofessional] errors than one with overwhelming record support.") The appellant could have established prejudice by producing evidence at the post-conviction hearing which created a reasonable probability that he would have been convicted of a lesser degree of homicide or acquitted. We turn to the evidence in the record of prejudice.

Ms. Abbott testified that she had

> found . . . one witness . . . who was not related in any way to [the appellant] or the Jacocks. He was an older man. He felt very strongly that the victim was pulling a gun. He believed that the victim was pulling a gun.

Had this witness been called at trial, his testimony would have significantly bolstered the appellant's theory of self-defense. And even if the testimony was not successful in convincing the jury to acquit the appellant, it may well have convinced them to convict him of something less than premeditated murder. This missing testimony was so significant in the context of this particular case that its exclusion undermines our confidence in the outcome of the trial. See Strickland, 466 U.S. at 694. Accordingly, trial counsel's failure to produce this witness constituted ineffective assistance of counsel which prejudiced the appellant.

The lower court's sole comments relating to this testimony go to the appellant's failure to call this witness at the post-conviction hearing.[3] But we are perplexed as to how the appellant could have produced this witness. Ms. Abbott found this gentleman on June 28, 1992. The appellant did not file for post-conviction relief until more than three years later. Post-conviction counsel was

_____

[3]"Since petitioner at his hearing on this petition has failed to produce a single additional witness to substantiate his claim of self-defense other than those actually called at trial, even after having been given an additional setting to call additional witnesses, this Court will not assume that his trial attorney could have done any better at trial."

-11-

not appointed until July 11, 1996.[4]  Ms. Abbott testified in November 1996 that she had no written record of the witness' name and could not recall it.  She further testified that she had given the witness' name and a summary of her interview with him to Perkins.  Perkins claimed to have never known about this man, although he was waiting outside the courtroom to testify.  We recognize that this witness' proposed testimony should have been produced at the post-conviction hearing under the general rule announced in Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990).  However, we think it is fundamentally unfair to hold this failure of proof against the appellant and, therefore, find the Black rule inapplicable under the facts of this case.  To hold otherwise puts the appellant in a double bind from which he cannot escape:  his lawyer's ineffectiveness condemns him not only at trial but prevents him from later proving that ineffectiveness at his post-conviction hearing.

The best evidence that the appellant had of the crucial testimony was Ms. Abbott, and he did produce that proof at the hearing.  Accordingly, because he produced independent proof of vital testimony that would have been available at the hearing but for his trial lawyer's ineffectiveness (in never discovering the witness, not calling him and losing all record of him), we hold that the appellant has established both prongs of the Strickland test.

With respect to the appellant's second issue, it was previously determined by this Court on direct appeal.  Therefore, the issue is not cognizable in a post-conviction petition. T. C. A. § 40-30-206(h).  The appellant's third issue is without merit.  The lower court, sua sponte, raised the issue of whether the appellant's aunt exerted undue influence over the appellant. The court found that she had not exerted such an influence over the appellant and that the appellant's decision to reject the state's plea agreement was made with

_____

[4]Prior post-conviction counsel had been removed in June 1996, for repeated failures to appear.

-12-

independence and sufficient maturity.  The evidence does not preponderate against the lower court's findings.

For the reasons set forth above, the judgment of the court below is reversed, the appellant's conviction is vacated and this cause is remanded for a new trial.

_____
PAUL G. SUMMERS, Judge

CONCUR:


_____
DAVID H. WELLES, Judge



_____
JOE G. RILEY, Judge